# USATRANSFORM
# FOURTH AMENDED AND RESTATED BYLAWS
Adopted November 30, 2023

## ARTICLE I
## STATEMENTS OF FAITH AND BELIEFS

1.1. **Statement of Faith**. While it is impossible to detail the depths of USATransForm's ("Ministry") scriptural doctrine in these Bylaws, generally, the Ministry subscribes to the following tenets:

   1.1.1. We believe the Bible to be the inspired, the only infallible, authoritative Word of God revealing the love of God to the world. 1 Thessalonians 2:13; 2 Timothy 3:15-17; John 3:16.

   1.1.2. We believe that there is one God, eternally existent in three persons: Father, Son, and Holy Spirit. Matthew 28:19; John 10:30; Ephesians 4:4-6.

   1.1.3. We believe in the deity of the Lord Jesus Christ, in His virgin birth, in His sinless life, in His miracles, in His vicarious and atoning death through His shed blood on the cross, in His bodily resurrection, in His ascension to the right hand of the Father, and in His personal return in power and glory. Matthew 1:23; John 1:1-4 and 1:29; Acts 1:11 and 2:22-24; Romans 8:34; 1 Corinthians 15:3-4; 2 Corinthians 5:21; Philippians 2:5-11; Hebrews 1:1-4 and 4:15.

   1.1.4. We believe: that all men everywhere are lost and face the judgment of God; that Jesus Christ is the only way of salvation; and that for the salvation of lost and sinful man, repentance of sin and faith in Jesus Christ results in regeneration by the Holy Spirit. Furthermore, we believe: that God will reward the righteous with eternal life in heaven; and that He will banish the unrighteous to everlasting punishment in Hell. Luke 24:46-47; John 14:6; Acts 4:12; Romans 3:23; 2 Corinthians 5:10-11; Ephesians 1:7 and 2:8-9; Titus 3:4-7.

   1.1.5. We believe in the present ministry of the Holy Spirit, whose indwelling enables the Christian to live a godly life and minister supernaturally. The baptism of the Holy Spirit is poured out on believers that they might have power to be His witnesses. John 3:5-8; Acts 1:8 and 4:31; Romans 8:9; 1 Corinthians 2:14; Galatians 5:16-18; Ephesians 6:12; Colossians 2:6- 10; Acts 1:4-8; Acts 2:4.

   1.1.6. We believe in the resurrection of both the saved and the lost; the saved unto the resurrection of eternal life and the lost unto the resurrection of damnation and eternal punishment. 1 Corinthians 15:51-57; Revelation 20:11-15.

   1.1.7. We believe in the spiritual unity of believers in the Lord Jesus Christ and that all true believers are members of His body, the Ministry. 1 Corinthians 12:12, 27; Ephesians 1:22-23.

Exhibit C

1.1.8. We believe that the ministry of evangelism (sharing and proclaiming the message of salvation only possible by grace through faith in Jesus Christ) and discipleship (helping followers of Christ grow up into maturity in Christ) is a responsibility of all followers of Jesus Christ. Matthew 28:18-20; Acts 1:8; Romans 10:9-15; 1 Peter 3:15.

1.1.9. We believe God's plan for human sexuality is to be expressed only within the context of marriage, that God created man and woman as unique biological persons made to complete each other. God instituted monogamous marriage between male and female as the foundation of the family and the basic structure of human society. For this reason, we believe that marriage is exclusively the union of one genetic male and one genetic female. Genesis 2:24; Matthew 19:5-6; Mark 10:6-9; Romans 1:26-27; 1 Corinthians 6:9.

1.1.10. We believe that we must dedicate ourselves to prayer, to the service of our Lord, to His authority over our lives, and to the ministry of evangelism. Matthew 9:35-38, 22:37-39, and 28:18-20; Acts 1:8; Romans 10:9-15 and 12:20-21; Galatians 6:10; Colossians 2:6- 10; 1 Peter 3:15.

1.1.11. We believe that human life is sacred from conception to its natural end; and that we must have concern for the physical and spiritual needs of our fellowmen. Psalm 139:13; Isaiah 49:1; Jeremiah 1:5; Matthew 22:37-39; Romans 12:20-21; Galatians 6:10.

1.2. **Statement of Beliefs.**

1.2.1. Marriage. We believe that because God our Creator established marriage as a sacred institution between one man and one woman, the idea that marriage is a covenant only between one and one woman has been the traditional definition of marriage for all of human history. Because of the longstanding importance of marriage to humans and their relationships and communities, and, most importantly, the fact that God has ordained that marriage be between one man and one woman, as clearly conveyed in God's inerrant Scriptures, including for example in Matthew 19:4-6 where in speaking about marriage Jesus referred to the fact that "he which made them at the beginning made them male and female." We believe marriage is based upon God's will for human life as conveyed to us through the Holy Scriptures, upon which this Ministry has been founded and anchored.

1.2.2. Sexuality. We believe consistent with Biblical principles, sexuality and the divinely prescribed boundaries for the expression thereof is covered clearly in the Holy Scriptures, which limit sexual contact to the marital relationship. Homosexual acts, adultery, bestiality, and all forms of fornication are categorically condemned in the Holy Scriptures. See 1 Cor. 6:18; 1 Thes. 4:3; Rom. 1:26-27; Prov. 5:3-5, 8-13; 7:21-27; Gal. 5:19; Exodus 20:14; Deut. 5:18; Matt. 5:27; 19:18; Luke 18:20; Rom. 13:9; James 2:11; Lev. 20:10-21; 1 Cor. 10:8; 6:18; Jude 7. Furthermore, the Ministry

believes that sexuality is assigned by God at birth, and the Holy Scripture does not permit an individual to alter his or her sexual identity physically or otherwise.

## ARTICLE II
## PURPOSES

2.1. **Purposes**. The Ministry's purpose shall be to redirect America toward Christ and Godly wisdom by mobilizing, unifying, and directing a powerful movement that alters the trajectory of the nation away from self-destruction to the commanding heights of each of the seven cultural mountains. The Ministry shall serve as a force multiplier by uniting influencers and combining their passions and resources. Specifically, the Ministry, with leadership from Mountain Chairs, shall work to:

2.1.1   Move the Arts and Media Mountain by moving the arts and their celebrities and industry leaders to produce books, theater, movies, music, dance, comedy, television, sports, digital platforms, video architecture, visual arts, games, fashion, celebrations, festivals, and holidays that celebrate what is true, honorable, just, pure, lovely, gracious, and worthy as commended in Philippians 4:8; and by moving the media and its leaders, commentators, reporters, writers, and producers to report true narratives reflecting a biblical world view and all responsible viewpoints, to present compelling stories of God's gracious work among His people; to defend those under attack because of their Christian and conservative views, policies, and actions; to share biblical discoveries that confirm faith and challenge secular humanism; and to evangelize audiences and provide guidance for all.

2.1.2   Move the Business Mountain and its executives to lead companies consistently with biblical values including respect for the dignity of each person, the nobility of serving others, sound business ethics, and the importance of charity and spiritual capital; and to educate business leaders, the next generation of leaders, and students regarding these values and the biblical basis for capitalism.

2.1.3   Move the Church Mountain so that it reflects the power of God, works in unity with all its members and other institutions, reforms the seven mountains, encourages Christians to integrate their lives within the seven mountains, teaches and preaches the Word of God, evangelizes and disciples its members, and innovates to address local community issues.

2.1.4   Move the Education Mountain and its leaders, professors, teachers, and those writing texts and curricula: to present biblical world views within curricula, teaching, and publications; to teach of men and women of valor throughout history including Christians and others of faith; to end discrimination against Christian educators so they might hire competent Christians and others as teachers and professors; to achieve superior results; to support school choice; to promote Christian communities within schools and colleges; and to foster an accurate teaching of American ideals and history.

2.1.5   Move the Family and Community Mountain by inculcating respect from human life from the moment of conception to natural death and the understanding that children are a gift from God; by promoting marriage as a lifelong commitment between one man and one woman with distinctive gifts and callings for husbands, wives, and children and also as the exclusive relationship for sexual activity; by teaching that the family merits everyone's highest priority-- second only to love of God; by promoting prayer within families; by making parents responsible for their children's education and upbringing and forming children to honor their parents; and by freeing families from addictions and unworthy entertainments.

2.1.6   Move the Government Mountain and its leaders, elected representatives, and judges to let the Word of God inform their work; to act with integrity and transparency; to conduct fair and honest elections; to practice fiscal restraint; to defend and benefit the people; to eliminate corruption; to cooperate with religious and secular associations for the common good; to reduce regulatory burdens; to strike against the human trafficking and its causes; and to develop policies to preserve liberty and encourage human flourishing.

2.1.7   Move the Science and Technology Mountain and its leaders, scientists, physicians, engineers, computer science specialists, teachers, and entrepreneurs and the institutions and professional societies they serve to research, develop, articulate, and apply science in the service of humanity, its health, and freedom and to do so in a manner that accurately reflects created matter and life, to do so ethically and free of political bias, and to avoid evil applications of science.

2.1.8   Support Ziklag members and employer members that, as part of their Christian witness and exercise, provide health or other benefits to their respective employees in a manner consistent with Christian values; and advocate for their religious freedom and other constitutional rights so they might conduct their work and business according to Christian values.

## ARTICLE III
## POWERS

3.1 **Powers**. In furtherance of the Statement of Faith, Statement of Beliefs, and Purposes and subject to the restrictions in 26 U.S.C. § 501(c)(3) and in Section 3.2 below, the Ministry shall have and may exercise all the powers now or hereafter conferred upon nonprofit corporations under Texas law and may do everything convenient to achieve its Purposes.

3.2 **Restrictions on Powers**.

3.2.1   No part of the Ministry's net earnings or assets shall inure to the benefit of or be distributable to any director or officer, or any other individual (except that reasonable compensation may be paid for services rendered for the benefit of the Ministry), and no director, officer, or other individual, shall be entitled to share in any distribution of any of the Ministry's assets upon dissolution.

3.2.2 Upon dissolution of the Ministry, all the Ministry's assets remaining after payment of or provision for all of its liabilities shall be paid over or transferred to a § 501(c)(3) entity as identified by the Board.

3.2.3 No substantial part of the Ministry's activities shall be the attempting to influence legislation. The Ministry shall not participate or intervene in (including the publishing of statements) any political campaign on behalf of or in opposition to any candidate for public office.

## ARTICLE IV
## BOARD OF DIRECTORS

4.1 **Powers**. Subject to limitations under the Texas Business Organizations ("Code"), the Certificate of Formation, and these Bylaws, the Board of Directors (the "**Board**") shall have full and exclusive authority:

4.1.1 To convene and conduct meetings of the Board in accordance with these Bylaws;

4.1.2 To elect and remove its Chair, Vice Chair, Directors, and Officers

4.1.3 To request and receive information from its Directors and Officers;

4.14 To hire and remove the Executive Director, to determine the terms of the Executive Director's employment contract, to request information and receive reports form the Executive Director, and to consult with the Executive Director;

4.1.5 To approve the compensation recommended by the Compensation Committee for the Officers;

4.1.6 To authorize the purchase of, sale, or encumbrance of the Ministry's property valued in excess of $50,000 (either in a single transaction or the aggregate);

4.1.7 To approve the Ministry's budget; and

4.1.8 To engage a certified public accountant to audit the Ministry's financial accounts and statements as directed by the Board, and to approve the members of the audit committee and committees of the Board;

4.1.9 To define the Ministry's policies and objectives.

4.2 **Classes**. There shall be two classes of Directors. The first consists of regularly elected Directors with full voting rights. The second consists of the spouses of the Directors who hold office by virtue of their marriage to Directors ("Spousal Directors"). Spousal Directors may receive notice of and attend Board meetings, serve on committees, and carry out all other roles of Directors, but shall have no vote on any matter before the Board nor shall the presence of any Spousal Director be counted to determine if a quorum exists. Both Directors

and Spousal Directors shall maintain confidentiality with respect to all confidential information that they come to know through their service on the Board.

4.3   **Number of Directors**. The Board shall consist of no less than five and no more than fifteen Directors. A majority of the Directors are required to be "independent" as defined in Standard 2 of the Evangelical Council on Financial Accountability's Seven Standards of Responsible Stewardship ("ECFA Standards").

4.4   **Qualifications**. Each Director must be at least 18 years old, baptized, a professing Christian, a member of a Christian church, and a Ziklag member. Each must affirm the Ministry's Statements of Faith and Beliefs, attend Board meetings regularly and never be absent from two consecutive regularly scheduled meetings unless excused by the Chair, and invite others to become Ziklag members and serve on Board-related projects. No Director shall be living in: a common-law state of matrimony; or a manner inconsistent with the Ministry's beliefs on marriage or sexuality. Directors shall not engage in communications or other conduct that would give rise to scandal or otherwise discredit the Ministry.

4.5   **Term of Directors**. Each Director except the Chair shall hold office for a period of three years or until a successor is elected, appointed, or designated herein, and may serve successive terms. Beginning January 1, 2021, no Director may serve for more than three consecutive terms, except that the following will not be counted for purposes of this Section: (1) any partial term served by reason of an election to a vacancy for an unexpired term of a predecessor; or (2) any term followed by a period out of office of at least one year. If at any time the respective terms of the Directors are not staggered so that the terms of approximately one-third of the Directors expire each year, the Board shall divide the total number of Directors into three groups, with each group containing one-third of the total, as near as may be. The Directors shall assign a one-year term to the first group, a two-year term to the second, and a three-year term to the third. The Chair is not subject to term limits as a Director.

4.6   **Nomination and Election**. In addition to nominees recommended by the Nominating Committee, at any such election meeting, any Director then on the Board may nominate a candidate to be a Director, with the second of any other Director then on the Board. Any nominees must be found by the Board to meet the qualifications to serve as a Director prior to such election.

4.7   **New Directors.** The Chair or his or her designee shall be responsible for onboarding every new Director. This process shall consist of, at the least, providing the new Director with copies of the Certificate of Formation, these Bylaws, the Conflict of Interest Policy, the Whistleblower Policy, the Gift Acceptance Policy, the Executive Compensation Policy, and the Ministry's most recent year-end financial statements. The Chair or his or her designee shall also discuss with every new Director the Ministry's history, values, aspirations, and current challenges.

4.8    **Resignation**. Any Director may resign by giving written notice to the Ministry. Such resignation shall be effective on the date of the receipt of such notice, or at any date designated by the Board.

4.9 **Removal**. The Board may, with or without cause, vote to remove a Director at any time, by a vote of a majority of all of the Directors. The notice of a meeting at which a Director is to be removed must state that a purpose of the meeting is to consider removal of a Director.

4.10 **Vacancies**. Any vacancy occurring in the Board may be filled at any time by a majority vote of the remaining Directors, even if it is less than a quorum of the Directors, or if it is a sole Director. A person so elected to fill a vacancy shall be elected for the unexpired term of his or her predecessor in office.

4.11 **Meetings**. Meetings of the Board may be in person or by any other means designated by the Chair. In person meetings shall be held at a location in the United States designated by the Chair. Meetings may be held through the use of any means of communication so long as (1) each person entitled to participate in the meeting consents to the meeting being held by the chosen means, and (2) the chosen means provides access to the meeting in a manner or using a method by which each person participating can communicate concurrently with every other participant.

    4.11.1 Regular Meetings. Regular meetings of the Board shall occur at least semi-annually. Regular meetings of the Board may be held without notice if the time of such meetings are fixed by a resolution of the Board.

    4.11.2 Annual Meeting. The board shall conduct an annual meeting in the fourth quarter of each year to receive nominations for Directors from the Nominating Committee; to elect Directors, members of the Nominating Committee, and Board and Staff Officers; to receive and act upon recommendations from the Compensation Committee, to approve budgets for the following year, and to set dates for board meetings during the following year.

    4.11.3 Special Meetings. A special meeting of the Board may be called by the Chair or any three Directors.

    4.11.4 Attendees. Board meetings are only open to Directors, Spousal Directors, Officers, and guests invited by the Chair.

    4.11.5 Executive Session. The Chair or a majority of the Directors may call for meetings in executive session. The Chair may exclude Spousal Directors, Officers, consultants or others from participation in his or her discretion.

4.12 **Notice of Meetings**.

    4.12.1 Manner. Notice of meetings shall be given to each Director by one of the following means: (a) personal delivery of written notice; (b) first class mail; (c) telephone communication; (d) text; or (e) by e-mail.

    4.12.2 Time Requirements. Notice sent by first class mail shall be deposited in the mail at least one week before the meeting time. Notices given by personal delivery, telephone,

      or e-mail shall be delivered, phoned, or emailed at least twenty-four hours before the meeting time.

   4.12.3  Contents. The notice shall state the time, location, and agenda for the meeting. For in-person meetings, notice shall provide the agenda and state the date, time, and location of the meeting. For other meetings, notice shall provide the agenda and state conference call numbers, digital links, or other means for accessing the meeting.

   4.12.4  Waiver. A Director's attendance at a meeting shall constitute waiver of notice, except when the Director attends a meeting for the express purpose of objecting that the meeting is not properly called.

4.13  **Quorum**. A majority of the Directors then in office shall constitute a quorum. A duly called or held meeting at which a quorum was present and that has not adjourned may continue to transact business even if enough Directors leave the meeting so that less than a quorum remains. Except when amending the Certificate of Formation or these Bylaws, as indicated in Article X of the Certificate of Formation or in paragraph 11.2 of these Bylaws, no action may be approved without the vote of at least a majority of the number of Directors in attendance when the quorum was established. If a quorum is present at no time during a meeting, a majority of the Directors present may adjourn the meeting.

4.14  **Actions of Board**. The Board shall seek to act by consensus. However, the vote of a majority of the Directors present at a meeting at which a quorum is present shall be sufficient to constitute the act of the Board. except when amending the Certificate of Formation or these Bylaws, as indicated Article X of the Certificate of Formation or in paragraph 11.2 of these Bylaws

4.15  **Proxies**. Voting by proxy is prohibited.

4.16  **Deadlock**. If there is a deadlock in voting, the Chair shall cast an additional ballot which shall be known as a "majority ballot," so that an official act or decision may be taken by the Board. The majority ballot shall be cast in addition to the regular Director's vote cast by the Chair.

4.17  **Action Without Meeting**.

   4.17.1  Any action by the Board may be taken without a meeting if all of the Directors consent in writing.

   4.17.2  When prompt Board action is desirable, the Chair or any three Directors may request a vote by e-mail. The matter shall be submitted to a minimum twenty-four-hour period for discussion. If an objection to the electronic vote is received after the discussion is opened, the Chair will determine whether to proceed to an electronic vote. All Directors have the right to submit a vote within a period specified by the Chair of no less than twenty-four hours and no more than three calendar days. Upon closure of the vote, the Secretary shall tally the votes and certify the result. A copy

      of the same should be filed with the Ministry's corporate records and signed by the Secretary.

4.18 **No Compensation**. Directors shall not receive salaries or compensation for their services to the Board. The Board may adopt a resolution reimbursing Directors for expenses of attendance at a Board meeting. If a Director serves the Ministry in another capacity, he or she may receive reasonable compensation for the same if agreed to by the Chair.

4.19 **Standards of Conduct**.

    4.19.1 Discharge of Duties. Directors and Officers shall discharge their duties, including any duties as Committee members, in good faith, with ordinary care, in a manner they reasonably believe to be consistent with the Statements of Faith and Beliefs and in the best interest of the Ministry They shall also abide by the Ministry's policies and procedures, including without limitation its: Conflict of Interest Policy, Whistleblower Policy, Gift Acceptance Policy, Conflict of Interest Policy, and its Executive Compensation Policy. .

    4.19.2 Reliance on Others. Directors and Officers may in good faith rely on information, opinions, reports, or statements, concerning the Ministry or another person that were prepared or presented by a variety of persons, including Officers and employees of the Ministry, professional advisors or experts such as accountants or legal counsel. A Director is not relying in good faith if the Director has knowledge concerning a matter in question that renders reliance unwarranted. Similarly, Directors have no personal liability for actions taken or omitted by advisors if the Board acts in good faith and with ordinary care in selecting the advisor.

    4.19.3 Liability to Ministry. A Director or Officer will not be liable to the Ministry for any action taken or omitted to be taken if, in connection with the same, they performed the duties of their position in compliance with this Section.

## ARTICLE V
## BOARD OFFICERS

5.1 **Designation and Qualification**. The officers of the Board will include a Chair, Vice-Chair, and a Treasurer (collectively, "Board Officers"). One person may hold no more than one office at a time, except in exceptional circumstances for no more than 90 days. Board officers must be Directors of the Ministry and must have served as Directors for one year before taking office.

5.2 **Term of Board Officers**. The Board Officers will be elected by the Board at the December meeting and shall serve for three-year terms. If a Board Officer is elected to such a position in the second or third year of his or her term as a Director, he or she shall automatically be re-elected as a Director at the end of the Director's three-year term. No Board Officer may serve for more than three consecutive terms, except that the following will not be counted for purposes of this Section: (1) any partial term served by reason of an election to a vacancy for

an unexpired term of a predecessor; and (2) any term followed by a period out of office of at least one year.

5.3 **Resignation, Removal, and Vacancies.** The resignation and removal of Board Officers and the filling of vacancies for Board Officers shall proceed in the same manner as in articles 4.9, 4.10, and 4.11 for Directors.

5.4 **Duties.**

5.4.1 Chair. The Board shall elect a Chair who shall prepare a proposed agenda for all Board meeting and preside at the same. The Chair shall provide leadership, vision, and direction to the Board, and work closely with the Executive Director to ensure organizational effectiveness.

5.4.2 Vice Chair. The Board shall also elect a Vice Chair to serve as Chair of the Board in the Chair's absence.

5.4.3 Treasurer. The Board shall elect a Treasurer to serve as Chair of the Board's Finance and Audit Committee. The Treasurer shall oversee and report to the Board on the Ministry's finances; ensure that financial statements are distributed regularly to Board members; bring noteworthy issues to the Board's attention; and work with and support the Ministry's staff during the annual budget process, the annual independent audit, and preparation of tax filings. After recommendation of the Finance and Audit Committee, and approval of the Board, the Treasurer shall engage an accounting firm to audit the Ministry's financials, to report to the Finance and Audit Committee, and to ensure that the annual budget and Form 990 reports are presented to the Board for approval and timely filed with the Internal Revenue Service.

## ARTICLE VI
## STAFF OFFICERS

6.1 **Staff Officer Positions**. The staff officers shall be the Executive Director, Chief Financial Officer, Secretary, and such other officers deemed necessary by the Board including an Executive Vice President, Vice President(s), and Chief Operating Officer (collectively, "Officer**s**"). The Board may define the authority and duties of each such position. None of the Officers need to be a Director. Any two of these offices may be combined, except for the Executive Director and the Secretary.

6.2 **Qualifications.** Officers are required to meet the same qualifications for service as the Directors except that the Officers are not required to be members of the Ministry's Ziklag program.

6.3 **Election and Term of Office**. The Officers shall be elected by majority vote of the Board at a regular or special meeting of the Board and shall hold office until their term ends by resignation, termination, or death.

6.4 **Executive Director and Chief Engagement Officer.** The Executive Director shall lead the Ministry consistent with policy approved by the Board. He or she shall have the authority and duties incident to the position of an Executive Director or one serving as president. He or she shall report to the Chair, the Executive Committee, and the Board.

6.5 **Chief Financial Officer**. The Chief Financial Officer ("CFO") shall have general charge and control of the Ministry's financial affairs and shall have all powers and shall perform all duties incident to the position of CFO. The CFO shall: (2) give and receive receipts for moneys paid to or received and for debts or obligations discharged; (3) pay all bills, payrolls, and other proper debts of the Ministry as they become due; (4) create, implement, and monitor fiscal and budgetary policies designed to protect the Ministry's financial health while fulfilling strategic plans and missions; (5) serve as or supervise the Ministry's controller; (6) prepare and present financial reports to the Executive Director and the Board; (7) monitor compliance with requirements for Section 501(c)(3) of the Internal Revenue Code; and (8) ensure that the Ministry remains in good standing with the Texas Secretary of State. The CFO shall act in a general executive capacity and assist the Executive Director in the administration of the Ministry's financial affairs. The CFO shall have such other powers and perform such other duties as may from time to time be assigned by the Executive Director. The CFO may not be a member of the Board.

6.6 **Secretary**. The Secretary of the Ministry shall: (1) give all notices as provided in these Bylaws or by law; (2) take minutes of the meetings of the Board and Executive Committee and keep the minutes as part of the corporate records; (3) maintain custody of the corporate records; (4) keep a register of the contact information for each Director, Officer, and employee; (5) perform duties as assigned by the Executive Director; and (6) perform all duties incident to the office of Secretary. Reasonable compensation of the Secretary consistent with the Executive Compensation Policy shall be determined by the Executive Director. The Secretary is not required to be a member of the Board.

6.7 **Removal**. The Officers of the Ministry may be removed, with or without cause, by a majority vote of the Board.

6.8 **Resignation**. Any Officer may resign by written notice to the Chair and the Executive Director. Any such resignation shall take effect on the date of the receipt of such notice, or at any later time agreed to by the departing Officer and the Executive Director.

6.9 **Vacancies**. A vacancy in any office shall be filled at any time by a majority vote of the Directors.

ARTICLE VII
NON-VOTING MEMBERS

7.1 **Ziklag members**.

    7.1.1 Qualifications. Ziklag members shall satisfy the qualifications stated in the Ministry's certificate of formation, those additional qualifications adopted by the

Board, and be accepted or appointed to membership by the Executive Director or his or her designee.

7.1.2 Committees. Ziklag members shall be encouraged to serve on one or more mountain committees with the approval of the committee chair and to otherwise volunteer to advance the purposes of the Ministry.

7.1.3 Term. So long as they continue to satisfy the qualifications for membership, Ziklag members shall serve for an indefinite term. They may, however, resign at any time or be dismissed by majority vote of the Board in its sole discretion.

7.1.4 Voting rights. Ziklag members have no vote in the election of Directors or Board or Staff Officers or with regard to any corporate actions by the Board or the Ministry. If they are appointed to serve on committees, they may vote on committee matters.

7.2 **Employer members.**

7.2.1 Qualifications.

7.2.1.1 An employer member must be either over 50% owned by Christians at least one of whom is a Ziklag member or has a governing body comprised of over 50% Christians at least one of whom is a Ziklag member.

7.2.1.2 The employer member must affirm the requirement in paragraph 6.2.1.1 and commit to provide in its employee health plan coverage consistent with Christian values.

7.2.1.3 "Consistent with Christian values" means excluding services for, healthcare coverage of, reimbursement for, or access to (1) abortion, (2) abortion-inducing drugs and devices, (3) treatments derived from human embryonic stem cells or fetal tissue acquired from acquired from destruction of a fertilized ovum or from abortion, (4) assisted suicide, (5) gender transition services including without limitation puberty blockers, cross-sex hormones, gender reassignment surgeries, and gender conforming surgeries, and (6) counseling affirming or encouraging any such acts--unless the employer has exhausted all alternatives that do not bring about a greater evil, the employer opposes the act, and the employer has taken reasonable steps to avoid compromising its Biblical witness. "Christian values" may also mean exploring what additional coverages to provide to employees because of Jesus' example and teaching. Possibilities, among others, include coverage for ethical fertility treatments, assistance with adoption expense, and grants of extra paternity or bereavement leave.

7.2.2 Term. So long as they continue to satisfy the qualifications for membership, employer members may have an indefinite term. They may, however, resign at any time or be dismissed by majority vote of the Board in its sole discretion.

      7.2.3 Voting rights. Employer members have no vote in the election of Directors or with regard to any corporate actions by the Board or the Ministry.

## ARTICLE VIII
## COMMITTEES

8.1 **Committees**. The Board may establish, appoint members, and set rules for discharge of the duties for standing and *ad hoc* committees, including at least the following:

    8.1.1 **Executive Committee.** The Chair, Vice-Chair, Treasurer, and Executive Director shall serve as the Executive Committee. The Executive Committee shall have all of the powers and authority of the Board in between Board meetings, subject to the direction and control of the Board. It is also responsible for oversight of the Ministry's Gift Acceptance Policy.

    8.1.2 **Nominating Committee.** Annually, the Board shall establish a Nominating Committee to make and receive recommendations for candidates to serve as Directors. The Nominating Committee shall prepare a report for the Annual meeting summarizing the qualifications for all nominees received, which shall be distributed by the Secretary with the notice for any meeting at which an election for Directors occurs.

    8.1.3 **Compensation Committee.** The Compensation Committee shall consist of the non-staff members of the Executive Committee. They shall be advised by the Executive Director who shall be recused with regard to recommendation or decisions as to his or her own compensation. At least two of the persons serving on the Committee shall be Directors. The Compensation Committee is responsible for administration of the Executive Compensation Policy. It shall receive the recommendation of the Executive Director, and, before the Annual Meeting, make independent recommendations to the Board for approval consistent with the Board's Executive Compensation Policy, to set the compensation for the Officers.

    8.1.4 **Finance and Audit Committee.** The Finance and Audit Committee shall (1) provide oversight of the financial reporting, audit process, and internal controls and compliance with laws applicable to the Ministry, (2) review monthly financials provided by the CFO, (3) work with the Executive Director and Ministry staff on preliminary budgets to be presented to the Board at the Annual Meeting, (3) identify independent auditors for recommendation by the Treasurer to the Board, (4) oversee the process for Board review and approval of audited financial statements and IRS Form 990 filings, (5) periodically review the Ministry's business insurance policies, (6) enforce the Ministry's Conflict of Interest and Whistleblower Policies, and (7) undertake such other activities as assigned by the Board. Minutes of this committee should be presented to the Board, which should act on any recommendations made by the Finance and Audit Committee.

- 8.1.5 **Governance Committee.** The Governance Committee shall receive, review, and recommend to the Board amendments to the Ministry's Bylaws, Certificate of Formation, and policies.

- 8.1.6 **Membership and Development Committee.** The Membership and Development Committee shall develop criteria for Ziklag member qualifications including annual dues, character qualities, process for applying/acceptance. Additionally, this committee shall recommend rules for development and fundraising activities to the Board for final approval.

8.2 **Qualifications and Composition.** Committee members must be members of the Ministry's Ziklag program.

8.3 **Term of Office**. Each member of a Committee shall serve until the next annual meeting of the Board in December, or until a successor is appointed.

8.4 **Chair and Vice Chair**. The Board shall appoint a Chair and Vice Chair for each Committee. The Chair shall call and preside at all meetings. When the Chair is absent, is unable to act, or refuses to act, the Vice Chair shall perform the duties of the Chair. When a Vice Chair acts in place of the Chair, the Vice Chair shall have all the powers of and be subject to all the restrictions upon the Chair.

8.5 **Committee Oversight**. Directors and the Executive Director shall exercise oversight of every Committee and have the authority to be present at any Committee meeting as non-voting *ad hoc* committee members, to ensure that those serving as the Ministry's committee chairs and members comply with the law and conduct themselves in the highest ethical principles. If a dispute over ethical or legal Committee activity is raised, it must be reported to the Finance and Audit Committee for investigation and a recommendation.

## ARTICLE IX
## INDEMNIFICATION

9.1 **Coverage.** The Ministry shall provide a trust fund, insurance, or other arrangement to effectuate this Article. As described herein, requests for indemnification shall not be unreasonably withheld.

9.2 **Permissive Indemnification**. The Ministry may to the maximum extent permitted by the Code indemnify and advance expenses in a civil, criminal, criminal, administrative, or investigative proceeding ("Proceeding") to any person who is or was a Director, Officer, employee or agent of the Ministry, or to such person's heirs, executors, administrators and legal representatives, so long as:

- 9.2.1 The Proceeding arose while the person was acting on behalf of the Ministry or it was instituted by reason of the fact that such person is or was a Director, Officer, employee or agent of the Ministry;

    9.2.2    The person conducted himself or herself at all relevant times consistent with the Ministry's Statements of Faith and Belief, with its values as set forth in the Purposes of the Ministry, and with the Standards of Conduct set forth in Section 3.19 (regardless whether the person was an Officer or Director during the relevant time period, and the person had not engaged in criminal conduct, willful misconduct, improper receipt of personal benefit, intentional torts, bad faith, or self-dealing;

    9.2.3    The requested indemnification would not jeopardize or be inconsistent with the Ministry's Section 501(c)(3) status and would not constitute an excess benefit transaction under 26 U.S.C. § 4958; and

    9.2.4    The Board, acting in its sole discretion, approved any such request for indemnification.

9.3    **Right to Impose Conditions to Indemnification**. The Ministry shall have the right to impose such reasonable requirements and conditions as may appear appropriate to the Board in each specific case and circumstance, including, but not limited to: (a) that any counsel representing the party to be indemnified in connection with the defense or settlement of any proceeding shall be counsel mutually agreeable to the party and to the Ministry; (b) that the Ministry shall have the right to assume and control the defense or settlement of any claim or proceeding made, initiated, or threatened against the party to be indemnified; and (c) that the Ministry shall be subrogated, to the extent of any payments made by way of indemnification, to all of the indemnified party's right of recovery, and that the party to be indemnified shall execute all writings and do everything necessary to assure such rights of subrogation to the Ministry.

## ARTICLE X
## BOOKS AND RECORDS

10.1    **Required Books and Records**. The Ministry shall keep complete books and records of account at its principal office.

10.2    **Meeting Minutes**. The Ministry will keep as permanent records minutes of all Board meetings, a record of all Board actions without a meeting, a record of all actions taken by the Executive Committee in place of the Board, and a record of all waivers of notices of meetings of the Board.

10.3    **Accounting Records**. The Ministry shall maintain appropriate accounting records and conduct an annual audit of its financial statements by a certified public accounting firm.

## ARTICLE XI
## MISCELLANEOUS

11.1    **Fiscal Year**. The Ministry adopts the calendar year as its fiscal year.

11.2    **Amendments to Bylaws**. These Bylaws may only be amended by a majority vote of the Board.

11.3 **Alternative Dispute Resolution**. In keeping with 1 Corinthians 6:1-8, the Ministry encourages all those who are friends or agents of the Ministry to seek to resolve any dispute that may arise between them or with the Ministry in a Godly manner and to utilize alternative dispute resolution techniques including face-to-face communications, mediation, and arbitration assisted by experienced Christian organizations providing dispute resolution services or others.