IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DR. JAMES DOBSON FAMILY INSTITUTE, ET AL., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:24-CV-00986-O |
| ROBERT F. KENNEDY JR., ET AL., | § § § | |
| Defendants. | § | |

## ORDER

Before the Court are Plaintiffs' Combined Motion for Preliminary Injunction and Motion for Partial Summary Judgment (ECF No. 16); Defendants' Cross-Motion to Dismiss, or in the alternative, for Summary Judgment and Brief in Support (ECF Nos. 17–18); Plaintiffs' Reply (ECF No. 22); and Defendants' Reply (ECF No. 23). After examining the relevant case law, Defendants' Cross-Motion to Dismiss and Motion for Summary Judgment are **DENIED**. Plaintiffs' Motion for Partial Summary Judgment is **GRANTED**.

## I.    BACKGROUND

There are two Plaintiffs in this dispute: (1) the James Dobson Family Institute ("JDFI") and (2) United in Purpose ("UIP"). Both Plaintiffs are nonprofit Christian ministries.[1] JDFI teaches biblical principles through newsletters, broadcasts, books, and other forms of media.[2] UIP is an association that represents sixty-five Christian organizations.[3] All of Plaintiffs' employees and members are practicing Christians that agreed to work in accordance with Christian values.[4]

---

[1] Pls.' Compl. ¶ 119, 141, ECF No. 1.
[2] *Id.* ¶ 121.
[3] *Id.* ¶ 161.
[4] *Id.* ¶ 126, 157–58.

Defendants are the United States Department of Health and Human Services ("HHS"), the United States Equal Opportunity Employment Commission ("EEOC"), and the heads of each agency.[5]

This case arises out of four regulatory mandates issued by the HHS and the EEOC.[6] First, Plaintiffs challenge the HHS's rule interpreting Section 1557 of the Affordable Care Act ("ACA") and the EEOC's guidance interpreting Titles VII and IX of the Civil Rights Act (collectively, the "AGT Mandate").[7] Second, Plaintiffs challenge the EEOC's rule interpreting the Pregnant Workers Fairness Act ("PWFA") (the "PWFA Rule").[8] Third, Plaintiffs challenge the EEOC's guidance interpreting Title VII's sexual harassment provisions (the "Harassment Guidance").[9] Plaintiffs allege that all three of these federal mandates are in violation of both the Religious Freedom Restoration Act ("RFRA") and the First Amendment of the United States Constitution.[10]

### A. AGT Mandate

The AGT Mandate is composed of (1) the HHS's interpretation of Section 1557 of the ACA (the "2024 Rule") and (2) the EEOC's interpretation of Titles VII and IX of the Civil Rights Act.[11] Section 1557 of the ACA prohibits discrimination in federally funded healthcare programs on the basis of race, color, national origin, sex, age, and disability. 42 U.S.C. § 18116(a) (incorporating 42 U.S.C. § 2000d). The 2024 Rule states that discrimination on the basis of sex includes discrimination based on sex characteristics, intersex traits, pregnancy or related conditions, sexual orientation, gender identity, and sex stereotypes. Nondiscrimination in Health

---

[5] Pursuant to Federal Rule of Civil Procedure 25(d), Robert F. Kennedy, Jr. and Andrea R. Lucas were substituted for their predecessors as Secretary of the United States Department of Health and Human Services and Acting Chair of the Equal Opportunity Employment Commission, respectively.
[6] Pls.' Compl. ¶ 1, ECF No. 1.
[7] *Id.*
[8] *Id.* ¶ 2.
[9] *Id.*
[10] *Id.* ¶ 184–200.
[11] *Id.*

Programs and Activities, 89 Fed. Reg. 37522 (May 6, 2024) (to be codified 42 CFR Parts 438, 440, 457, and 460, and 45 CFR Parts 80, 84, 92, 147, 155, and 156).

This definition broadens the scope of sex discrimination. For example, the term "gender identity"—according to HHS's 2022 Rule—encompasses transgender, nonbinary, gender nonconforming, and other gender identity disorders. Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47824, 47867 (Aug. 4, 2022) (to be codified 42 CFR Parts 438, 440, 457, and 460 and 45 CFR Parts 80, 84, 86, 91, 92, 147, 155, and 156). Gender affirming care includes counseling, hormone therapy, surgery, and other services designed to treat gender identity disorders. *Id.* at 47834 n.139. In addition, pregnancy under the 2024 Rule was interpreted to include "termination of pregnancy." 2024 Nondiscrimination in Health, 89 Fed. Reg. at 37576. And this Rule requires coverage for fertility treatments such as IVF, surrogacy, and gamete donation. *Id.* at 37577. The 2024 Rule has no religious exemption, despite its interpretations of sex that are contrary to Christian beliefs. Instead of a religious exemption, the HHS evaluates religious issues on a case-by-case basis. *Id.*

The 2024 Rule regulates a broad range of health programs and activities. Although this Rule does not directly regulate Plaintiffs, it regulates Plaintiffs' third-party health insurance administrators ("TPA"). *Id.* at 37549 & n.66. The 2024 Rule permits the HHS transfer employment challenges that the HHS cannot directly regulate to the EEOC. *Id.* at 37552. The EEOC—like the HHS—interprets "sex discrimination" to include discrimination on the basis of sexual orientation and gender identity.[12]

---

[12] *See* Pls.' Mot. Summ. J.19, ECF No. 16 (citing a now unpublished EEOC website).

### B. PWFA Rule

In 2022, Congress passed the PWFA to protect pregnant women seeking workplace accommodations. 42 U.S.C. § 2000gg-1. In 2024, the EEOC issued a final rule that expanded the definition of "pregnancy, childbirth, or related medical conditions" to include the termination of pregnancy and fertility treatment.  Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29096, 29183 (Apr. 19, 2024) (to be codified 29 CFR Part 1636). Employers are now obliged to accommodate abortions and fertility treatments—even if these practices are against their religious beliefs. Again, instead of a religious exemption, the EEOC will enforce this Rule on a case-by-case basis. *Id.* at 29104.

### C. Harassment Guidance

In 2024, the EEOC adopted Harassment Guidance that addressed Title VII's sexual harassment provisions.[13] 42 U.S.C. §§ 2000e. Plaintiffs take issue with the Harassment Guidance's approach to (1) the use of pronouns contrary to biological sex, (2) the use of private spaces traditionally reserved to one sex, and (3) the ability to speak about human sexuality.[14]

The Harassment Guidance prohibits employers from using pronouns that are inconsistent with an employee's gender identity.[15] The Harassment Guidance also requires employers to allow employees to use restrooms that align with their gender identity.[16] And finally, the Harassment Guidance says that speech related to a woman's decisions about abortion and gender-transitions

---

[13] *Enforcement Guidance on Harassment in the Workplace*, U.S. EQUAL EMP. OPPORTUNITY COMM'N § II(A)(5) (Apr. 29, 2024), https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace.
[14] *Id.*
[15] *Id.*
[16] *Id.*

may constitute sexual harassment.[17] Once again, the EEOC will evaluate religious disputes on a case-by-case basis.[18]

### D. Procedural History

Plaintiffs filed their complaint on October 15, 2025. The parties filed a Joint Motion agreeing to stay Plaintiffs' APA claim while the Court resolved the forthcoming Cross-Motions for Summary Judgment.[19] On November 11, 2024, Plaintiffs filed their Motion for Summary Judgment.[20] In Plaintiffs' Motion for Summary Judgment. Plaintiff argued that the Court could provide complete relief by only resolving the RFRA claim in their favor, and thus the Court did not need to reach the First Amendment arguments.[21] On December 4, 2025, Defendants filed their Cross-Motion to Dismiss, or in the alternative, for Summary Judgment and Brief in Support.[22] The Motions are ripe for the Court's consideration.

## II.    LEGAL STANDARDS

### A. Subject Matter Jurisdiction

Motions filed under Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge the subject matter jurisdiction of a district court to hear a case. FED. R. CIV. P. 12(b)(1). There are two types of challenges to a court's subject matter jurisdiction under Rule 12(b)(1): a "facial attack" and a "factual attack." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack challenges jurisdiction based solely on the pleadings. *Id.* When ruling on a facial attack, a court must presume that factual allegations in the complaint are true and determine whether they

---

[17] *Id.*
[18] *Id.* at § I(A) ("The EEOC will consider the implication of [RFRA] . . . on a case-by-case basis.").
[19] Joint Mot., ECF No. 14.
[20] Pls.' Mot. Summ. J., ECF No. 16.
[21] *Id.* at 44 ("Given RFRA's dispositive effect here, the Court need not address Plaintiffs' remaining claims.").
[22] Defs.' Dismiss and Mot. Summ. J., ECF No. 17.

establish subject matter jurisdiction. *Id.* By contrast, a Rule 12(b)(1) motion presents a factual attack when the motion is accompanied by supporting evidence, such as affidavits, that contradicts the jurisdictional allegations in the complaint. *Id.* In a factual attack, the plaintiff bears the burden of proving by a preponderance of the evidence that a court has subject matter jurisdiction. *Id.*

It is well settled that on a Rule 12(b)(1) motion, a court may resolve issues of contested facts. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). Because at issue in a Rule 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). In short, no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 413.

Because a Rule 12(b)(1) motion concerns a court's power to hear the case, when a Rule 12(b)(1) motion is brought with other Rule 12 motions to dismiss, the Rule 12(b)(1) motion should be addressed first. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Summary Judgment

The Court may grant summary judgment when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks and citation omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis for its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

## III.    STANDING

Defendants first move to dismiss this case on Rule 12(b)(1) grounds, namely, that Plaintiffs individually and as an organization do not have standing to sue.[23] Additionally, Defendants argue that this case is not ripe.[24] The Court addresses these arguments in turn before reaching the merits of Plaintiffs' case.

For the following reasons, the Court determines that Plaintiffs have standing to sue in accordance with Article III of the Constitution. Defendants' Motion to Dismiss for lack of jurisdiction is thus **DENIED**.

### A.    Plaintiffs' Standing

Defendants argue that Plaintiffs do not have standing to sue.[25] The Court disagrees. For a plaintiff to have standing to sue, he must show that he (1) suffered an injury-in-fact, (2) the injury is fairly traceable to the conduct complained of, and (3) the injury will likely be redressed by a

---

[23] Defs.' Br. Supp. Mot. Dismiss and Mot. Summ. J. 18–32, ECF No. 18.
[24] *Id.* 18, 32.
[25] *Id.* at 18–32.

favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The Court addresses each Article III standing requirement in turn.

### 1. Injury

In the pre-enforcement context, a plaintiff satisfies the injury-in-fact requirement if "(1) [he] has an 'intention to engage in a course of conduct arguably affected with a constitutional interest,' (2) his intended future conduct is 'arguably . . . proscribed by [the policy in question],' and (3) 'the threat of future enforcement of the [challenged policies] is substantial.'" *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (second, third, and fourth alterations in original) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014)).

Plaintiffs suffered an injury-in-fact as a result of the HHS's and EEOC's AGT Mandate. First, Plaintiffs intend to engage in a constitutional course of conduct—that being the free exercise of religious practice. Plaintiffs are Christian ministries that wish to operate consistent with their Christian beliefs. They do so through providing their employees and members with Christian-based health plans and employment accommodations that reflect their religious beliefs.

Second, Plaintiffs' ability to provide Christian-based health plans to employees is arguably proscribed under the AGT Mandate. Defendants argue that Plaintiffs are not covered entities that fall within the scope of Section 1557, so Plaintiffs are not subject to any requirements the AGT Mandate imposes.[26] Defendants also argue that Plaintiffs can keep their Christian-based health plans because of the Employee Retirement Income Security Act ("ERISA").[27] ERISA allows Christian employers to make custom health plans that align with their religious beliefs. 29 U.S.C. § 1002(33); 29 U.S.C. § 1002(b)(2).

---

[26] *Id.* at 19.
[27] Defs.' Reply 4, ECF No. 23.

In response, Plaintiffs argue that although they are not covered entities within the scope of Section 1557, Plaintiffs' TPAs are required to follow the AGT Mandate.[28] Plaintiffs also note that Section 1557's anti-discrimination policies explicitly supersede ERISA protections.[29] The Court agrees with Plaintiffs.

The 2024 Rule states that health plans made in accordance with ERISA "must not be construed to invalidate or impair [S]ection 1557." 2024 Nondiscrimination in Health, 89 Fed. Reg. at 37627. Put simply, this means that Plaintiffs' self-designed, Christian-based health plans are subject to Section 1557 and its interpretations. *See C.P. ex. rel. Pritchard v. Blue Cross Blue Shield of Ill.*, No. 3:20-CV-06145-RJB, 2022 WL 17788148, at *8, 10 (W.D. Wash. Dec. 19, 2022) (holding that Section 1557's anti-discriminatory requirement trumped a religious employer's ERISA health plan that excluded gender affirming care).

Thus, Plaintiffs are left with two draconian choices: Plaintiffs can contract with TPAs— who are required to abide by Section 1557, thus violating Plaintiffs' Christian beliefs—or not provide healthcare plans to their employees at all. This is analogous to *Monsanto Co. v. Geertson Seed Farms*, where the Supreme Court held that a plaintiff forced to choose between two undesirable options suffered an Article III injury. 561 U.S. 139, 151–53 (2010). Accordingly, Plaintiffs intended future conduct is arguably proscribed by the 2024 Rule. Thus, Plaintiffs have an Article III injury. *Id.*

Third, the threat of future enforcement of the AGT Mandate is substantial. Even though Defendants argue they will not *directly* enforce the 2024 Rule against Plaintiffs,[30] Defendants have repeatedly litigated against private parties that sought religious regarding similar rules.[31] Also, the

---

[28] Pls.' Reply 3, ECF No. 22.
[29] *Id.*
[30] Defs.' Reply 4, ECF No. 23.
[31] Pls.' Compl. ¶ 3 n.3, ECF No. 1.

2024 Rule expressly permits the HHS to transfer employment disputes over which it lacks jurisdiction to the EEOC. 2024 Nondiscrimination in Health, 89 Fed. Reg. at 37552. The EEOC, just like the HHS, defines sex in contradiction with Christian values.[32] And finally, the 2024 Rule empowers private parties to bring sex discrimination claims that would otherwise not exist.

Here, where First Amendment protections are indisputably at stake, almost any threat of enforcement is substantial. *See Braidwood Mgmt. v. EEOC*, 70 F.4th 914, 927 (5th Cir. 2023) (holding that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" (citation omitted)); *see also Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956–57 (1984) (holding that litigants "are permitted to challenge a statute not because their own rights of free expression are violated, but because . . . the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression" (citation omitted)). Accordingly, Plaintiffs suffered an Article III injury with respect to the AGT Mandate.

Plaintiffs also suffered an injury-in-fact due to the EEOC's PWFA Rule and Harassment Guidance. Unlike the 2024 Rule, the PWFA Rule and Harassment Guidance directly regulate Plaintiffs.[33] Thus, Plaintiffs can show that their constitutional interest in religious freedom is proscribed by both the PWFA Rule and Harassment Guidance.

Defendants argue that merely being subjected to regulations, in the abstract, does not create an injury.[34] Plaintiffs argue that they are not "merely subjected" to regulations but are instead

---

[32] EEOC, Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity, question 4 (June 15, 2021).
[33] Pls.' Mot. Summ. J. 35–36, ECF No. 16.
[34] Defs.' Reply 8, ECF No. 23.

facing restrictions to their constitutional rights of free exercise and free speech.[35] The Court agrees with Plaintiffs.

In the pre-enforcement context, the Fifth Circuit held that courts "assume a credible threat of prosecution" where a recently enacted government action facially restricts First Amendment rights. *Speech First*, 979 F.3d at 335 (citation omitted). And in *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court held that "where threatened action by *government* is concerned," a plaintiff is not required "to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." 549 U.S. 118, 128–29, (2007). Although this Court does not address Plaintiffs' First Amendment claims because Plaintiff said RFRA provides complete relief, the First Amendment implications associated with both the PWFA Rule and Harassment Guidance are clear.

Thus, the threat of enforcement is substantial, and Plaintiffs have suffered an injury-in-fact under Article III.

### 2. Traceability

Plaintiffs' injuries are fairly traceable to the conduct being challenged. It is well established that in a pre-enforcement challenge, the traceability requirement is met if the named defendants possess authority to enforce the complained-of provision. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 54 (2021) (Thomas, J., concurring) ("First, an *Ex parte Young* defendant must have 'some connection with the enforcement of the act'—i.e., 'the right and the power to enforce' the 'act alleged to be unconstitutional.'" (quoting *Ex parte Young,* 209 U.S. 123, 157, 161, (1908)); *see also Okpalobi v. Foster*, 244 F.3d 405, 425–26 (5th Cir. 2001); *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007). With respect to the PWFA Rule and Harassment Guidance, it is

---

[35] Pls.' Reply 9, ECF No. 22.

undisputed that Defendants will enforce these regulations, directly against Plaintiffs, on a "case-by-case basis."[36]

Regarding to the AGT Mandate, Defendants argue that the HHS cannot specifically enforce the AGT Mandate against Plaintiffs, so any injury to Plaintiffs is not caused by them.[37] While true that causality is not present if the injury complained of is "th[e] result [of] the *independent* action of some third party not before the court, that does "not exclude injury produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (citations omitted) (alterations in original). As mentioned above, the injury imposed on Plaintiffs by the AGT Mandate is that their contracted TPAs will have to provide health plans that are contrary to Christian values. Although Plaintiffs' injury results from their TPA's health plans, the TPA's health plans would not be injurious but for the AGT Mandate. Therefore, Plaintiffs' injuries from the coercive effect of the AGT Mandate are fairly traceable to Defendants.

### 3. Redressability

Plaintiffs' injuries can be redressed by a favorable court decision. "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). The relief sought by Plaintiffs would undeniably relieve Plaintiffs' alleged injuries. With respect to the AGT Mandate, a favorable ruling for Plaintiffs would allow them to create health plans that reflect their religious values without the threat of prosecution. And for the PWFA Rule and Harassment Guidance, the threat of direct prosecution from the EEOC would substantially decrease.

---

[36] Pls.' Mot. Summ. J. 44, ECF No. 16.
[37] Defs.' Br. Supp. Mot. Dismiss and Mot. Summ. J. 20, ECF No. 18.

### B. UIP's Associational Standing

UIP has associational standing to sue. For a plaintiff to have associational standing, "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

As addressed above, each of UIP's members would have standing to sue in their own right. This is because each individual member agreed to UIP's bylaws, which include Christian perspectives on sexuality and abortion directly contrary to the AGT Mandate, the PWFA Rule, and Harassment Guidance.[38]

Next, the interests UIP seeks to protect are germane to the organization's purpose. UIP is a Christian association, comprised of Christian members, and seeks to promote Christian values through its Statement of Faith and Statement of Beliefs.[39] Finally, participation of the individual members is not required here. Defendants argue that the members' beliefs are not uniform,[40] but the evidence suggests otherwise. All members agreed to the same Statement of Faith and Statement of Beliefs, face the same injury, and request the same relief.[41] Therefore, UIP has associational standing to sue.

### C. Ripeness

This dispute is ripe for judicial review. "[W]hen a plaintiff asks for declaratory relief, the court must assess whether an actual or immediate controversy exists between the parties or whether, instead, the controversy remains abstract and hypothetical." *Braidwood*, 70 F.4th at 930.

---

[38] Pls.' Reply 11–12, ECF No. 22.
[39] Pls.' Compl. ¶ 141–45, ECF No. 1.
[40] Defs.' Reply 14, ECF No. 23.
[41] *See generally* Pls.' Compl., ECF No. 1.

Thus, the Court "must look at two factors to determine ripeness: (1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967*)*).

First, a claim is fit for judicial decision if it "presents a pure question of law that needs no further factual development." *Id.* No further factual development is needed here. The "purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law." *Id.* at 926 (internal quotation marks and citations omitted). Thus, an actual enforcement action is not required to make this controversy fit for a judicial decision.

Second, Plaintiffs would undoubtedly face hardship without court consideration. Plaintiffs' rights under RFRA and the First Amendment are affected by the AGT Mandate, the PWFA Rule, and Harassment Guidance. As explained above, Defendants infringement of Plaintiffs' RFRA and First Amendment rights constitute hardship.

Accordingly, this dispute is ripe for judicial review, and Plaintiffs therefore have standing to sue.

## IV.    ANALYSIS

Plaintiffs' Complaint contains seven claims that challenge four federal mandates: the HHS's and EEOC's AGT Mandate,[42] the EEOC's PWFA Rule, and the EEOC's Harassment Guidance.[43] The Court does not consider Plaintiffs' APA claim at this time.[44] Additionally, Plaintiffs request that if RFRA provides full relief, the Court need not consider Plaintiffs' First Amendment claims.[45] The Court holds that Defendants violate Plaintiffs and UIP's members' RFRA rights. Namely, because AGT Mandate, PWFA Rule, and Harassment Guidance violate

---

[42] The Court continues to consider these two mandates in tandem.
[43] Pls.' Compl. ¶ 184–207, ECF No. 1.
[44] *See* Joint Mot. Stay, ECF No. 14.
[45] Pls.' Compl. ¶ 184–89, ECF No. 1.

RFRA. Plaintiffs' Motions for a Preliminary Injunction and Partial Summary Judgment are therefore **GRANTED**, and Defendants' Motion for Summary Judgment is **DENIED**.

Plaintiffs moved for a preliminary injunction and partial summary judgment, requesting the Court to declare that Section 1557, Titles VII and IX, and the PWFA do not require Plaintiffs and their members to cover or provide gender-affirming care, nor accommodate employee abortions, immoral artificial reproductive technologies, false pronouns, and requests to improperly access single sex spaces.[46] In response, Defendants moved for summary judgment on this claim.

The AGT Mandate, PWFA Rule, and Harassment Guidance violate RFRA. RFRA precludes the federal government from "substantially burden[ing] a person's exercise of religion" unless the burden (1) "is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling interest." 42 U.S.C. § 2000bb-1(b). RFRA strict scrutiny test requires courts to interpret the protection of religious exercise to the "maximum extent" possible. *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 696 (2014). The Court addresses each RFRA's two requirements separately.

**A. Substantial Burden**

The AGT Mandate, PWFA Rule, and Harassment Guidance substantially burden Plaintiffs' exercise of religion. To determine whether a substantial burden exists, courts should look towards how compliance and non-compliance of the regulations at question affect the plaintiffs. *Hobby Lobby*, 573 U.S. at 720–26. Justice Alito frames this analysis in two parts: (1) "would non-compliance have substantial adverse practical consequences?" and (2) "would compliance cause the objecting party to violate its religious beliefs, as it sincerely understands them?" *Little Sisters of the Poor v. Pennsylvania*, 591 U.S. 657, 692 (2020) (Alito, J., concurring).

---

[46] *See* Pls.' Mot. Summ. J., ECF No. 16.

The parties do not dispute that compliance with the disputed mandates would cause Plaintiffs to violate their religious beliefs. But Defendants argue that non-compliance does not have substantial adverse practical consequences because future enforcement of the AGT Mandate, PWFA Rule, and Harassment Guidance is speculative.[47] Defendants also argue that enforcement is not plausible because the HHS and the EEOC comply with RFRA.[48] These arguments are misguided.

In all pre-enforcement challenges, an enforcement action has not yet happened. But that does not render them speculative. Instead, as discussed above, Plaintiffs face a real threat of enforcement. And even though Defendants assert the regulations comply with RFRA, their lack of explicit religious exemptions suggests that non-compliance—even by religious organizations—may still result in civil liability and litigation.

This Court held that when the government requires a religious employer to provide a nondiscriminatory and "exceedingly persuasive justification" for refusal to act contrary to their Christian values, a substantial burden is present. *Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660, 692 (N.D. Tex. 2016) (citation omitted). A "law that 'operates so as to make the practice of . . . religious beliefs more expensive' in the context of business activities imposes a burden on the exercise of religion." *Id.* (alteration in original) (quoting *Hobby Lobby*, 573 U.S. at 710).

Here, the AGT Mandate, PWFA Rule, and Harassment Guidance all make the practice of religion more "expensive" because Defendants' case-by-case approach subjects Plaintiffs or their TPAs to litigation, civil penalties, and injunctive orders that infringe on their right to free exercise.[49] *See Catholic Benefits Ass'n v. Burrows*, 732 F. Supp. 3d 1014, 1022 (D.N.D. 2024)

---

[47] Defs.' Br. Supp. Mot. Dismiss and Mot. Summ. J. 32, 35, ECF No. 18.
[48] *Id.* at 33.
[49] Pls.' Mot. Summ. J. 39–40, ECF No. 16.

(holding that a "religious defense is not the same as a religious exemption" and "[t]he burden of investigation and possible litigation, at the very least, provides 'a substantial likelihood of added regulatory burden and compliance costs.'" (quoting *Louisiana v. EEOC*, 705 F. Supp. 3d 643, 664 (W.D. La. 2024)). Thus, Defendants' regulatory actions impose a substantial burden on Plaintiffs.

### B.  Compelling Government Interest

Defendants do not provide a compelling interest that justifies the burden imposed on Plaintiffs' free exercise of religion. Here, Defendants must demonstrate that the challenged regulations advance "interests of the highest order." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993) (quoting *McDaniel v. Paty*, 435 U.S. 618, 628 (1978)). "[B]roadly formulated interests justifying the general applicability of government mandates" are insufficient. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006). Instead, Defendants must show by specific evidence that Plaintiffs' religious practices jeopardize the federal government's stated interests. *Merced v. Kasson*, 577 F.3d 578, 592 (5th Cir. 2009).

Defendants argue that they are advancing multiple specific and well-founded government interests.[50] For example, Defendants argue that their regulations ensure that qualified employees can remain in the workforce while receiving healthcare.[51] Defendants also wish to eradicate workplace discrimination against women, limit harassment in the workplace, and promote healthy pregnancies.[52] In response, Plaintiffs argue that the federal government's interests are broadly formulated.[53] And even if the federal government's interests are sufficiently specific, Defendants

---

[50] Defs.' Br. Supp. Mot. Dismiss and Mot. Summ. J.  40, ECF No. 18.
[51] *Id.*
[52] *Id.*
[53] Pls.' Mot. Summ. J. 41–42, ECF No. 16.

do not explain how an exemption for religious employers would harm their asserted interests.[54] The Court agrees with Plaintiffs.

First, Defendants' compelling interests are broadly formulated. *See Religious Sisters I*, 513 F. Supp. 3d at 1148 (holding that an assertion by the EEOC of its broad interests "in combating discrimination in the workforce" is insufficient (citation omitted)). Next, Defendants make no effort to state how a religious exemption would jeopardize the federal government's stated interests. To the contrary, both the PWFA and Title VII include a religious exemption, while the PWFA Rule and Harassment Guidance do not.

The EEOC respects other exemptions within Title VII and the PWFA but are not willing to respect the religious exemption. For example, employers with less than fifteen employees, which make up eighty percent of private employers,[55] are exempt from Title VII and the PWFA. 42 U.S.C. § 2000e; Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. at 29097. The EEOC provides no reasons for why the religious exemption harms their interest in preventing discrimination while other exemptions do not.[56] And in *Fulton v. City of Philadelphia*, the Supreme Court held that a religious exemption must apply to a nondiscriminatory policy if other discretionary exemptions are applicable. 593 U.S. 522, 542 (2021). Thus, the EEOC's interest in eliminating discrimination looks more like a targeted attack against religious employers.

With respect to the AGT Mandate, "the government's own health insurance programs, Medicare and Medicaid, do not mandate coverage for transition surgeries; the military's health insurance program, TRICARE, specifically excludes coverage for transition surgeries." *Franciscan Alliance*, 227 F. Supp. 3d at 693. Thus, Defendants' own actions prove that their

---

[54] *Id.*
[55] *Id.* at 41 (citing Richard Carlson, The Small Firm Exemption, 80 St. John's L. Rev. 1197, 1198–99, 1199 n.14 (2006)).
[56] *See generally* Defs.' Br. Supp. Mot. Dismiss and Mot. Summ. J., ECF No. 18.

interest is not of the *highest order*. *See Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 546. If it were, Defendants themselves would comply with the AGT Mandate. Accordingly, Defendants fail to show that their interests are sufficient to burden Plaintiffs' religious freedom.

## C. Least Restrictive Means

Finally, RFRA requires the federal government to use the least restrictive means possible to achieve its goals. *Holt v. Hobbs*, 574 U.S. 352, 364–65 (2015). "The least-restrictive-means standard is exceptionally demanding." *Hobby Lobby*, 573 U.S. at 728. The federal government does not meet this standard.

Defendants seek to enforce the interests of Title VII and the PWFA while acting in direct contradiction with Title VII and the PWFA. This is because Title VII and the PWFA have religious exemptions accompanying these laws. 42 U.S.C. § 2000e-1(a). But the mandates in dispute use a "case-by-case" analysis, in lieu of a religious exception. 2024 Nondiscrimination in Health, 89 Fed. Reg. at 37577; Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. at 29104.[57] Thus, the EEOC's least-restrictive-means for executing the PWFA and Title VII is not a case-by-case approach. A religious exemption—as Congress *requires*—is a less restrictive method to execute these laws. *See Fulton*, 593 U.S. at 542 (holding that the government should not deny a religious exemption absent a compelling reason that satisfies strict scrutiny).

With respect to the AGT Mandate, this Court previously held the most straightforward way for the government to expand access to transition and abortion procedures is by the government assuming the cost of these procedures when religious employers object to them. *Franciscan Alliance*, 227 F. Supp. 3d at 693. And in *Hobby Lobby*, the Supreme Court held that the least-

---

[57] *Enforcement Guidance on Harassment in the Workplace*, U.S. EQUAL EMP. OPPORTUNITY COMM'N § I(A) Apr. 29, 2024), https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace ("The EEOC will consider the implication of [RFRA] . . . on a case-by-case basis.").

restrictive method for providing access to contraceptives contrary to Christian beliefs is for the government to cover the costs, unless they can show this is not a viable option. 573 U.S. at 728. The government has not attempted to show why they cannot directly cover these costs.[58] Thus, forcing religious employers to accommodate transition and abortion procedures is far from the least-restrictive way to expand access to these procedures.

For the reasons stated above, the Court holds that the AGT Mandate, the PWFA Rule, and Harassment Guidance violate RFRA.

## V.    REMEDIES

Having found in favor of Plaintiffs on the merits, the Court must finally consider the proper remedy. To alleviate the harms and injuries suffered as a result of Defendants' actions, Plaintiffs request that this Court (1) provide declaratory relief; (2) vacate the PWFA Rule; (3) issue a permanent injunction; and (4) award nominal damages, attorney's fees.[59]

### A. Declaratory Relief

Plaintiffs are entitled to declaratory relief in this case. Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* The Declaratory Judgment Act is "an enabling Act, which confers . . . discretion on courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation omitted). And "[t]he existence of another adequate remedy [such as a vacatur or injunction] does not preclude a declaratory judgment that is otherwise appropriate." FED. R. CIV. P. 57.

---

[58] *See generally* Defs.' Br. Supp. Mot. Dismiss and Mot. Summ. J.., ECF No. 18.
[59] Pls.' Compl. 55–62, ECF No. 1.

Plaintiffs successfully established that the HHS's and EEOC's interpretations of Section 1557 of the ACA, Title VII, and the PWFA are unlawful agency actions in violation of RFRA. As a result, the Court finds that Plaintiffs are entitled to their requested declaratory relief. Thus, the Court **DECLARES** that:

(1) Section 1557 of the ACA and any rules or guidance implementing it do not require the Plaintiffs to provide insurance or self-funded plan coverage for gender-transition services, surgical or chemical abortion, or artificial reproductive technologies;

(2) Title VII and any rules or guidance implementing it do not require the Plaintiffs to provide insurance or self-funded plan coverage for gender-transition services, surgical or chemical abortion, or artificial reproductive technologies;

(3) The PWFA and any rule implementing it do not require Plaintiffs to accommodate an employee's chemical or surgical abortion, advocacy for abortion, facilitation of an abortion; or an employee's artificial reproductive technology, advocacy for artificial reproductive technology, or facilitation of artificial reproductive technology;

(4) The PWFA, the PWFA Rule, Title VII, and any rule or interpretation implementing these statutes do not require Plaintiffs: to speak or communicate in favor of the chemical or surgical abortion, artificial reproductive technology, or gender transition; to refrain from speaking or communicating against the same when such is contrary to their Christian faith; to use pronouns inconsistent with a person's biological sex; or to allow persons to use bathrooms or other private spaces reserved for the opposite sex;

(5) The PWFA Rule and Defendants' enforcement of it against Plaintiffs violate the laws described in their causes of action to the extent that the PWFA Rule requires Plaintiffs to accommodate chemical or surgical abortion or artificial reproductive technology.

(6) The statutes, regulations, interpretations, and guidances at issue in this case, and Defendants' enforcement of them against Plaintiffs, violate the laws described in their causes of action, and that no taxes, penalties, or other burdens can be charged or assessed against the Plaintiffs for failure to pay for, cover, or accommodate (by word or deed) chemical or surgical abortion, artificial reproductive technology, or gender transition services contrary to Plaintiffs' religious beliefs.

(7) Any interpretation of Title VII and Section 1557 or related regulation or guidance to require coverage of gender-transition services; chemical or surgical abortion; and artificial reproductive technologies that violate Plaintiffs' religious beliefs may not be applied against the Plaintiffs, their insurers, TPAs, PBMs, or other service providers; may not interfere with Plaintiffs' attempts to arrange or contract for morally compliant health coverage or related services for their employees; and that no taxes, penalties, or other burdens can be charged or assessed against such insurers, TPAs, PBMs, or other service providers in relation to their work for Plaintiffs.

(8) Plaintiffs have the right to contract with service providers, including insurers, TPAs, PBMs, and other service providers to secure morally compliant health plans.

**B. Permanent Injunctive Relief**

Plaintiffs are entitled to permanent injunctive relief. A permanent injunction is proper when a plaintiff (1) prevails on the merits, (2) there is no adequate remedy at law for the plaintiff's otherwise irreparable injury, (3) the balance of the harms favors the plaintiff, and (4) an injunction would serve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs satisfy each of these elements.

As extensively explained earlier in this Order, Plaintiffs satisfy the first requirement because they succeed on the merits of their RFRA claim. Regarding the remaining injunction factors, Plaintiffs are suffering and will continue to suffer irreparable harm due to credible threats of enforcement, compliance costs, and the chilling of statutory and constitutional rights. Likewise, the balance of the equities and the public interest factors are in Plaintiffs' favor. Defendants have not identified any concrete injuries to counterbalance the real harms facing Plaintiffs. And there is no public interest in unlawful government action. *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1143 (5th Cir. 2021). Accordingly, having considered the arguments, evidence, and relevant law, the Court holds that the relevant factors weigh in favor of entering a permanent injunction.

Because Plaintiffs carry their burden as to each of the permanent injunction factors, the Court next addresses the scope of the injunction. When ordering equitable relief, the Court is obligated to state "specifically" and "in reasonable detail . . . the act or acts restrained or required" under the injunction. FED. R. CIV. P. 65(d)(1)(b)–(c). The scope of injunctive relief is "dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). An injunction "should be crafted to provide 'complete relief to the plaintiffs.'" *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Yamasaki*, 442 U.S. at 702). At the same time, the injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). And it must be tailored to "redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018).

Therefore, the Court determines that an injunction focused on enforcement and implementation remains necessary to wholly redress Plaintiffs' injuries. Here, declaratory relief is

not enough without the additional protection that flows from the clarity of permanent injunctive relief, specified below. Thus, the Court **ENJOINS** Defendants from the following actions against Plaintiffs or UIP's members:

(1) The HHS interpreting or enforcing Section 1557 of the ACA to require Plaintiffs or UIP's members to provide insurance or self-funded plan coverage for gender-transition procedures, chemical or surgical abortion, or infertility treatments including by denying federal financial assistance or by otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement action;

(2) The EEOC interpreting or enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, or any implementing regulations thereto against the Plaintiffs or UIP's members in a manner that would require them to provide insurance or self-funded plan coverage for gender-transition procedures or artificial reproductive technology; from otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions because Plaintiffs or UIP's members excluded or denied such coverages; and from initiating any investigation into claims that Plaintiffs or UIP's members have violated Title VII or any implementing regulations thereto because Plaintiffs or UIP's members excluded or denied such coverages;

(3) The EEOC interpreting or enforcing the PWFA, 42 U.S.C. § 2000gg-1, *et. seq.*, or any implementing regulations thereto against the Plaintiffs or UIP's members in a manner that would require them to accommodate chemical or surgical abortion or artificial reproductive technology, speak in favor of the same or refrain from speaking against the same; from otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions because Plaintiffs or UIP's members refused such

24

accommodations, or engaged or abstained from such communications; and from initiating any investigation into claims or charges that Plaintiffs or UIP's members violated the PWFA or any implementing regulations thereto by denying such accommodations or by engaging or abstaining from such communications;

(4) The EEOC interpreting or enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, or any implementing regulations thereto against the Plaintiffs or UPI's members in a manner that would require them to speak or communicate in favor of the chemical or surgical abortion, immoral infertility treatments, or gender transition when such is contrary to Plaintiffs or UPI's members' religious beliefs; refrain from speaking or communicating against the same when such is contrary to Plaintiffs' or UPI's members religious beliefs; use pronouns inconsistent with a person's biological sex; or allow persons to use private spaces reserved for the opposite sex; from pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions because of such conduct; and from initiating any investigation into claims or charges that Plaintiffs or UPI's members violated the PWFA or any implementing regulations thereto because of such conduct.

The Court's injunction extends only to Plaintiffs in this lawsuit (and or UIP's members) to protect them from civil enforcement of the challenged agency actions. Any parties beyond this lawsuit are *not* covered. Crucially, this Court's award of permanent injunctive relief also does not offer any person blanket immunity from prosecution for all Section 1557, Title VII, and PWFA offenses. Defendants may still prosecute violations of these laws, as well as other lawful regulations. Additionally, because the EEOC is statutorily required to issue notice-of-right-to-sue letters ("NRTS") letters even when they do not pursue enforcement, the Court does not enjoin

Defendants from issuing NRTS letters. This relief should alleviate demonstrable injuries without unnecessarily burdening Defendants.

### C.  Vacatur and Other Remedies

Because the Court has yet to address Plaintiffs' APA claims, Plaintiffs' request for vacatur of the PWFA Rule is premature. Additionally, the Court **DEFERS** on all other remedies not addressed in this order, including damages and attorney's fees. The parties may submit further briefing related to all additional remedies **no later than August 21, 2025**. Should additional relief be required, the parties may brief the issue for the Court.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss and Motion for Summary Judgment (ECF No. 17) is **DENIED**. Plaintiffs' Motions for Preliminary Injunction and Partial Summary Judgment (ECF No. 16) is **GRANTED**. The parties are ordered to file a joint status report regarding Plaintiffs stayed APA claim no later than August 21, 2025.

**SO ORDERED** on this **8th day** of **August, 2025.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**