IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DR. JAMES DOBSON FAMILY INSTITUTE, ET AL., | § § § |
| Plaintiffs, | § § |
| v. | §   Civil Action No. 4:24-CV-00986-O |
| | § |
| XAVIER BECERRA, ET AL., | § § |
| Defendants. | § § |

# JUDGMENT

This Judgment is issued pursuant to 28 U.S.C. § 1915(e)(2).

This action came on for consideration by the Court, and the issues having been duly considered and a decision duly rendered,

It is **ORDERED**, **ADJUDGED**, and **DECREED** that:

1. Plaintiffs' Motion for Partial Summary Judgment is **GRANTED.**

2. Defendants' Cross-Motion to Dismiss and Motion for Summary Judgment are **DENIED**.

3. The Court **DECLARES** that:

    a. Section 1557 of the ACA and any rules or guidance implementing it do not require the Plaintiffs to provide insurance or self-funded plan coverage for gender-transition services, surgical or chemical abortion, or artificial reproductive technologies;

    b. Title VII and any rules or guidance implementing it do not require the Plaintiffs to provide insurance or self-funded plan coverage for gender-transition services, surgical or chemical abortion, or artificial reproductive technologies;

    c. The PWFA and any rule implementing it do not require Plaintiffs to accommodate an employee's chemical or surgical abortion, advocacy for abortion, facilitation of an abortion; or an employee's artificial reproductive technology, advocacy for artificial reproductive technology, or facilitation of artificial reproductive technology;

    d. The PWFA, the PWFA Rule, Title VII, and any rule or interpretation implementing these statutes do not require Plaintiffs: to speak or communicate in favor of the chemical or surgical abortion, artificial reproductive technology, or gender transition; to refrain from speaking or communicating against the same when such is contrary to their Christian faith; to use pronouns inconsistent with a person's biological sex; or to allow persons to use bathrooms or other private spaces reserved for the opposite sex;

    e. The PWFA Rule and Defendants' enforcement of it against Plaintiffs violate the laws described in their causes of action to the extent that the PWFA Rule requires Plaintiffs to accommodate chemical or surgical abortion or artificial reproductive technology.

    f. The statutes, regulations, interpretations, and guidances at issue in this case, and Defendants' enforcement of them against Plaintiffs, violate the laws described in their causes of action, and that no taxes, penalties, or other burdens can be charged or assessed against the Plaintiffs for failure to pay for, cover, or accommodate (by word or deed) chemical or surgical abortion, artificial reproductive technology, or gender transition services contrary to Plaintiffs' religious beliefs.

    g. Any interpretation of Title VII and Section 1557 or related regulation or guidance to require coverage of gender-transition services; chemical or surgical abortion; and artificial reproductive technologies that violate Plaintiffs' religious beliefs may not

       be applied against the Plaintiffs, their insurers, TPAs, PBMs, or other service providers; may not interfere with Plaintiffs' attempts to arrange or contract for morally compliant health coverage or related services for their employees; and that no taxes, penalties, or other burdens can be charged or assessed against such insurers, TPAs, PBMs, or other service providers in relation to their work for Plaintiffs.

   h. Plaintiffs have the right to contract with service providers, including insurers, TPAs, PBMs, and other service providers to secure morally compliant health plans.

4. The Court **ENJOINS** Defendants from the following actions against Plaintiffs or UIP's members:

   a. The HHS interpreting or enforcing Section 1557 of the ACA to require Plaintiffs or UIP's members to provide insurance or self-funded plan coverage for gender-transition procedures, chemical or surgical abortion, or infertility treatments including by denying federal financial assistance or by otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement action;

   b. The EEOC interpreting or enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., or any implementing regulations thereto against the Plaintiffs or UIP's members in a manner that would require them to provide insurance or self-funded plan coverage for gender-transition procedures or artificial reproductive technology; from otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions because Plaintiffs or UIP's members excluded or denied such coverages; and from initiating any investigation into claims that Plaintiffs or UIP's members have violated Title

    VII or any implementing regulations thereto because Plaintiffs or UIP's members excluded or denied such coverages;

c. The EEOC interpreting or enforcing the PWFA, 42 U.S.C. § 2000gg-1, et. seq., or any implementing regulations thereto against the Plaintiffs or UIP's members in a manner that would require them to accommodate chemical or surgical abortion or artificial reproductive technology, speak in favor of the same or refrain from speaking against the same; from otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions because Plaintiffs or UIP's members refused such accommodations, or engaged or abstained from such communications; and from initiating any investigation into claims or charges that Plaintiffs or UIP's members violated the PWFA or any implementing regulations thereto by denying such accommodations or by engaging or abstaining from such communications;

d. The EEOC interpreting or enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., or any implementing regulations thereto against the Plaintiffs or UIP's members in a manner that would require them to speak or communicate in favor of the chemical or surgical abortion, immoral infertility treatments, or gender transition when such is contrary to Plaintiffs or UIP's members' religious beliefs; refrain from speaking or communicating against the same when such is contrary to Plaintiffs' or UIP's members religious beliefs; use pronouns inconsistent with a person's biological sex; or allow persons to use private spaces reserved for the opposite sex; from pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions because of such conduct; and from initiating any investigation into claims or charges that

        Plaintiffs or UIP's members violated the PWFA or any implementing regulations thereto because of such conduct.

   e. The permanent injunction applies to Plaintiffs and to all present and future UIP members. To come within the scope of this Final Judgment, a present or future UIP employer member must meet the following criteria:

      i. The employer is not yet protected by any other judicial order from the statutes, regulations, guidances, or interpretations at issue in this case;

      ii. UIP has determined that the employer meets the UIP's employer membership criteria;

      iii. UIP's membership criteria have not materially changed since Plaintiffs filed this complaint;

      iv. the employer is not subject to an adverse ruling on the merits in another case involving the statutes, regulations, guidances, or interpretations at issue in this case; and

      v. the employer must have been an UIP employer member at the time of the alleged violation.

5. It is **ORDERED** that neither HHS nor the EEOC violates the Court's Order by taking any actions against any UIP member, anyone acting in concert or participation with a UIP member, or a UIP member's health plans and any insurers or TPAs, PBMs, or other service providers in connection with such health plans if the agency officials directly responsible for taking these actions are unaware of that entity's status as a UIP member or relevant relationship to a UIP member. However, if either agency, unaware of an entity's status as a UIP member or relevant relationship to a UIP member, takes any action enjoined by this Court's Order, the UIP member and the UIP may promptly notify a directly responsible agency official of the fact of the member's membership in the UIP or the entity's relevant

relationship to a UIP member and its protection under this Order. Once such an official receives such notice from the UIP member and verification of the same by the UIP, the agency shall promptly comply with this Order with respect to such member or related entity.

**SO ORDERED** on this **23rd day** of **December, 2025**.

_____
Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**